# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

ANASTACIO GRANILLO,

        Plaintiff,

v.

UNITED STATES OF AMERICA,

        Defendant.

## COMPLAINT FOR CIVIL RIGHTS VIOLATIONS

The Plaintiff in this case, Anastacio Granillo, is a 64-year-old New Mexican who was viciously assaulted by a U.S. Customs and Border Protection ("CBP") officer upon entering the United States from Mexico at the Columbus Port of Entry in New Mexico. This action concerns the tortious and unwarranted conduct of a federal officer of the United States and the limits on a law enforcement officer's authority to use force and detain an individual without reasonable suspicion or probable cause. Such limits are not diminished simply because the conduct occurred at an international border. Mr. Granillo brings this lawsuit to vindicate his rights and to obtain relief from this Court for the physical and emotional trauma caused by the officer's excessive use of force and abuse of power.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Anastacio Granillo, is a U.S. citizen and a resident of Luna County, New Mexico.

2. Defendant United States of America is liable pursuant to the Federal Tort Claims Act for the tortious conduct of federal employees, including investigative and law enforcement officers, acting within the scope of their office or employment. 28 U.S.C. § 1346(b)(1), 2671.

3. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. The Court has further jurisdiction over state law tort claims for damages against federal officials and employees, including investigative and law enforcement officers, pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1).

4. Plaintiff has exhausted his administrative remedies under the Federal Tort Claims Act, 28 U.S.C. § 2675(a), and this suit is timely filed pursuant to 28 U.S.C. § 2401(b).

5. Venue is proper in this judicial district under 28 U.S.C. § 1391 and 28 U.S.C. § 1402(b) because Plaintiff resides in this district and the incident giving rise to this action occurred in this district.

## FACTUAL BACKGROUND

6. At approximately 4:00 PM on June 18, 2019, Anastacio Granillo and his wife's cousin, Alfredo Nevares, arrived at the Columbus Port of Entry, located in Columbus, New Mexico, along the U.S.-Mexico international border.

7. Mr. Granillo and Mr. Nevares had spent the day in Mexico visiting family and were returning home to Deming, New Mexico in a vehicle with an air conditioner that was not functioning.

8. It was a sunny, hot summer day with temperatures in the 90s when they arrived at the Columbus Port of Entry.

9. Mr. Granillo and his passenger, Mr. Nevares, waited in the vehicular line for approximately twenty minutes as they approached the Columbus Port of Entry.

10. When Mr. Granillo and Mr. Nevares reached the front of the line, CBP Officer Oscar Orrantia, a uniformed on-duty CBP officer, approached the driver's side of Mr. Granillo's vehicle.

11. Mr. Granillo rolled down his window to speak with Officer Orrantia, who asked him his citizenship.

12. Mr. Granillo responded that he was an American citizen.

13. Mr. Granillo suggested to Officer Orrantia that given the sweltering heat it would be helpful to open up another lane to allow for faster processing of vehicles waiting to cross into the United States through the Columbus Port of Entry.

14. Officer Orrantia responded in an angry and aggressive tone, remarking to Mr. Granillo that CBP officers can do whatever they want.

15. Mr. Granillo viewed Officer Orrantia's name on his badge and stated it, which angered Officer Orrantia and led him to accuse Mr. Granillo of wanting to report him.

16. Mr. Granillo clarified that he had no intention of reporting him.

17. Officer Orrantia asked what Mr. Granillo was bringing into the United States.

18. Mr. Granillo told him that he was bringing allergy medication that he purchased in Mexico and reached for the medication, which was on the seat of the vehicle in eyesight of Officer Orrantia.

19. Mr. Granillo intended to hand the medication to Officer Orrantia but, unnerved by Officer Orrantia's aggressive demeanor, Mr. Granillo accidentally dropped it.

20. The medication landed in Officer Orrantia's hands, outside the driver's-side window of Mr. Granillo's vehicle.

21. Officer Orrantia accused Mr. Granillo of throwing the medication at him.

22. Mr. Granillo explained that he did not throw the medication but that it had unintentionally fallen out of his hand.

23. Officer Orrantia became increasingly upset and continued to escalate the encounter. His face looked extremely angry and he continued to accuse Mr. Granillo of wanting to report him.

24. Without providing any verbal notice, Officer Orrantia, who was armed with a gun, opened the driver's-side door of the vehicle where Mr. Granillo was seated.

25. Speaking in Spanish, Officer Orrantia ordered Mr. Granillo to take off his belt.

26. Because the Spanish word for "belt" could mean either a seatbelt or the belt for one's pants, Mr. Granillo was confused and started to take off the belt for his pants. His seatbelt remained fastened.

27. Officer Orrantia then ordered Mr. Granillo not to take off the belt for his pants.

28. Following the officer's order, Mr. Granillo began to re-fasten his belt.

29. Officer Orrantia then ordered Mr. Granillo to take off his seatbelt.

30. Mr. Granillo complied and unbuckled his seatbelt.

31. Officer Orrantia ordered Mr. Granillo to get out of the vehicle, which was still parked in the preliminary inspection area.

32. Mr. Granillo asked Officer Orrantia why he was being ordered to get out of the vehicle.

33. Officer Orrantia responded by entering the vehicle, throwing his body weight on top of Mr. Granillo, and pinning him against the seat.

34. Mr. Granillo was not engaging in any sort of criminal activity, did not pose a threat to Officer Orrantia or others, and was attempting to be as cooperative as possible given Officer Orrantia's rapid and unjustified escalation of the situation.

35. Officer Orrantia extracted Mr. Granillo from the vehicle.

36. Once outside, Mr. Granillo again asked Officer Orrantia why he was being handcuffed, as he had done nothing wrong.

37. Mr. Granillo ultimately turned around and, without resisting, put his hands behind his back, in order to comply, expecting to be handcuffed.

38. Instead, Officer Orrantia forcibly grabbed and twisted Mr. Granillo's right arm behind his back and slammed Mr. Granillo against the wall of the vehicle inspection bay.

39. Mr. Granillo hit his head against the wall and fell to the ground.

40. Mr. Granillo's vision became blurred and he was confused, dizzy, and lightheaded.

41. While Mr. Granillo was face down on the ground, Officer Orrantia maintained hold of Mr. Granillo's twisted right arm behind Mr. Granillo's back.

42. Several more CBP officers arrived to the scene and participated in physically restraining Mr. Granillo.

43. Officer Orrantia handcuffed Mr. Granillo while he was lying prone on the ground.

44. Officer Orrantia ordered Mr. Granillo to stand up.

45. Still dazed from the head impact, Mr. Granillo was unable to stand up on his own.

46. Disregarding the large bump that had developed on Mr. Granillo's head, Officer Orrantia again ordered Mr. Granillo to get up off the ground.

47. Mr. Granillo could not comply because he was disoriented.

48. While Mr. Granillo was on the ground, Officer Orrantia forcefully kicked Mr. Granillo in the legs.

49. Mr. Granillo remained on the ground for approximately three to five minutes.

50. The CBP officers, including Officer Orrantia, then lifted Mr. Granillo off the ground and escorted him, still handcuffed, to an office inside the Port of Entry.

51. The large bump on Mr. Granillo's head that resulted from Officer Orrantia throwing him against the wall was obvious and apparent.

52. Mr. Granillo also had significant bruising on his right arm and left leg.

53. Instead of tending to Mr. Granillo's obvious head injury, Officer Orrantia and the other CBP officers left him in the office, handcuffed.

54. Mr. Nevares, the passenger, had witnessed the incident from inside the vehicle and waited for Mr. Granillo while he was in the CBP office. He was concerned about Mr. Granillo's safety after witnessing Officer Orrantia's violent conduct and Mr. Granillo being taken away.

55. While Mr. Granillo was detained in the office, another CBP officer approached Mr. Granillo and asked for his age.

56. Mr. Granillo responded that he was sixty-four years old.

57. A CBP supervisor arrived at the office and began speaking to Officer Orrantia.

58. The CBP supervisor handed Mr. Granillo his passport and ordered Officer Orrantia to remove Mr. Granillo's handcuffs immediately.

59. Officer Orrantia did not do so.

60. The CBP supervisor had to instruct Officer Orrantia a second time to remove Mr. Granillo's handcuffs before he complied.

61. Mr. Granillo told the CBP supervisor that he was upset about how Officer Orrantia treated him and told the CBP supervisor that it was abusive.

62. The CBP supervisor did not respond.

63. The CBP supervisor appeared concerned about the bump on Mr. Granillo's head.

64. After Mr. Granillo had been detained in the office for about twenty minutes with no access to medical care, the CBP supervisor finally offered to call an ambulance for Mr. Granillo.

65. Mr. Granillo consented and an ambulance was called.

66. The ambulance arrived and the Emergency Medical Technicians ("EMTs") began to provide medical care to Mr. Granillo in the office.

67. The EMTs' assessment found that Mr. Granillo had two bumps on the right side of his head, an injury to the right elbow, and a severe headache

68. One of the EMTs informed Mr. Granillo that they have had problems in the past with Officer Orrantia being violent toward other people crossing the border.

69. The EMT asked Mr. Granillo if he wanted to be transported by ambulance to the hospital and he, in turn, asked the CBP supervisor who would take care of the ambulance bill and medical costs of a hospital visit for the injuries caused by Officer Orrantia.

70. The CBP supervisor said that CBP would not be responsible for those costs.

71. Mr. Granillo told the CBP supervisor that it was unfair to require people who are injured by CBP officers, through no fault of their own, to pay for necessary medical care.

72. The CBP supervisor made no comment in response.

73. Mr. Granillo ultimately declined the ambulance ride to the hospital out of fear of having to pay significant costs out-of-pocket.

74. After Mr. Granillo had been detained for approximately one hour, the CBP supervisor returned his personal property that the CBP officers had taken from his pockets and told him he was free to leave.

75. No criminal charges were brought against Mr. Granillo in relation to this incident.

76. On information and belief, a supervisory CBP officer advised Officer Orrantia on the date of the incident that he improperly escalated the situation, failed to call for assistance, and failed to act in a peaceful and professional manner.

77. On information and belief, the supervisory CBP officer warned Officer Orrantia that he could lose his job over an incident such as this one in which there was no reason to suspect illegal activity or another threat.

78. Two days after the incident, Mr. Granillo sought medical care at Mimbres Hospital in Deming, as he was still in pain from his head and limb injuries and wanted to check whether Officer Orrantia had inflicted permanent damage.

79. The hospital staff conducted a CT scan of Mr. Granillo's head and his right elbow.

80. Mr. Granillo incurred significant medical bills as a result of Officer Orrantia's unreasonable and excessive use of force, which were ultimately covered by Medicaid but should have been covered by CBP.

81. Mr. Granillo filed a police report regarding the incident with Officer Orrantia with the Luna County Sheriff's Department on or around June 26, 2019.

82. From the date of the incident forward, Mr. Granillo has suffered from chronic short term memory loss, a condition that he did not have prior to the encounter with Officer Orrantia.

83. Mr. Granillo has developed increased weakness in his hands and legs since the incident.

84. Due to the incident, Mr. Granillo has experienced an influx of mood swings in which he gets extremely upset at unpredictable moments. This did not occur prior to his head injury caused by Officer Orrantia.

85. Mr. Granillo also has begun to experience anxiety, something that he did not experience before with the incident involving Officer Orrantia.

86. Mr. Granillo has developed extreme fear about experiencing another abusive encounter with CBP officers.

### FIRST CAUSE OF ACTION
### Assault
### (Federal Tort Claims Act)

87. Plaintiff incorporates by reference the preceding paragraphs as though they were stated fully herein.

88. At all times relevant to this lawsuit, Officer Orrantia was a federal employee of the Government acting within the scope of his office or employment.

89. At all times relevant to this lawsuit, Officer Orrantia was an investigative or law enforcement officer of the United States Government empowered by law to execute searches, to seize evidence, and to make arrests for violations of Federal law.

90. Officer Orrantia's conduct caused Plaintiff to reasonably believe that he was in danger of receiving an immediate battery.

91. A reasonable person in the same circumstances as Plaintiff would have had the same belief.

92. At all times material hereto, Plaintiff had the constitutional right to be free from unlawful seizure, arrest, and detention and to be free from excessive and unnecessary force.

93. These rights remain protected and are not diminished at an international border.

94. Officer Orrantia's conduct was not for the purpose of a lawful arrest, search, or confinement and the amount of force was not reasonable or necessary to prevent immediate bodily harm to Officer Orrantia or others.

95. By his acts and omissions as described herein Officer Orrantia caused personal injury to Plaintiff.

96. Officer Orrantia did not possess discretion to use excessive, unreasonable, or unnecessary force against Plaintiff, as set out in mandatory directives including but not limited to Sections I.A.2, I.C.2, 4.A.2, and 4.C.2 of CBP's 2014 Use of Force Policy, Guidelines and Procedures Handbook.

97. Officer Orrantia did not possess discretion to violate Plaintiff's constitutional rights.

98. Plaintiff has exhausted his administrative remedies.

99. Under the Federal Tort Claims Act, the United States is liable to Plaintiff for assault.

## .SECOND CAUSE OF ACTION
### Battery
### (Federal Tort Claims Act)

100. Plaintiff incorporates by reference the preceding paragraphs as though they were stated fully herein.

101. At all times relevant to this lawsuit, Officer Orrantia was a federal employee of the Government acting within the scope of his office or employment.

102. At all times relevant to this lawsuit, Officer Orrantia was an investigative or law enforcement officer of the United States Government empowered by law to execute searches, to seize evidence, and to make arrests for violations of Federal law.

103. Officer Orrantia intended to cause a harmful or offensive contact with Plaintiff and the harmful contact occurred as described herein.

104. By his acts and omissions as described herein Officer Orrantia caused personal injury to Plaintiff.

105. At all times material hereto, Plaintiff had the constitutional right to be free from unlawful seizure, arrest, and detention and to be free from excessive and unnecessary force.

106. These rights remain protected and are not diminished at an international border.

107. Officer Orrantia's conduct was not for the purpose of a lawful arrest, search, or confinement and the amount of force was not reasonable or necessary to prevent immediate bodily harm to Officer Orrantia or others.

108. Officer Orrantia did not possess discretion to use excessive, unreasonable, or unnecessary force against Plaintiff, as set out in mandatory directives including but not limited to Sections I.A.2, I.C.2, 4.A.2, and 4.C.2 of CBP's 2014 Use of Force Policy, Guidelines and Procedures Handbook.

109. Officer Orrantia did not possess discretion to violate Plaintiff's constitutional rights.

110. Plaintiff has exhausted his administrative remedies.

111. Under the Federal Tort Claims Act, the United States is liable to Plaintiff for battery.

## THIRD CAUSE OF ACTION
### False Arrest and/or Imprisonment
### (Federal Tort Claims Act)

112. Plaintiff incorporates by reference the preceding paragraphs as though they were stated fully herein.

113. At all times relevant to this lawsuit, Officer Orrantia was a federal employee of the Government acting within the scope of his office or employment.

114. At all times relevant to this lawsuit, Officer Orrantia was an investigative or law enforcement officer of the United States Government empowered by law to execute searches, to seize evidence, and to make arrests for violations of Federal law.

115. Officer Orrantia intentionally confined and restrained Plaintiff without consent.

116. Officer Orrantia knew that he had no authority to confine and/or restrain Plaintiff.

117. Officer Orrantia's conduct went beyond the bounds of his authority as a law enforcement officer.

118. At all times material hereto, Plaintiff had the constitutional right to be free from unlawful seizure, arrest, and detention.

119. These rights remain protected and are not diminished at an international border.

120. By his acts and omissions as described herein Officer Orrantia caused personal injury to Plaintiff.

121. Officer Orrantia did not possess discretion to falsely arrest Plaintiff, as set out in mandatory directives including but not limited to 8 U.S.C.§ 1357(a)(5) and Section 4.A.2 of CBP's 2014 Use of Force Policy, Guidelines and Procedures Handbook.

122. Officer Orrantia did not possess discretion to violate Plaintiff's constitutional rights.

123. Plaintiff has exhausted his administrative remedies.

124. Under the Federal Tort Claims Act, the United States is liable to Plaintiff for false arrest.

## FOURTH CAUSE OF ACTION
### Negligence
### (Federal Tort Claims Act)

125. Plaintiff incorporates by reference the preceding paragraphs as though they were stated fully herein.

126. At all times relevant to this lawsuit, Officer Orrantia was a federal employee of the Government acting within the scope of his office or employment.

127. At all times relevant to this lawsuit, Officer Orrantia was an investigative or law enforcement officer of the United States Government empowered by law to execute searches, to seize evidence, and to make arrests for violations of Federal law.

128. Officer Orrantia had the duty to exercise reasonable and ordinary care for the protection of the health and safety of Plaintiff during all interactions with him and while in custody.

129. By his acts and omissions as described herein Officer Orrantia breached his duty by failing to exercise the care that a reasonably prudent and qualified individual would exercise in the same situation.

130. By his acts and omissions as described herein Officer Orrantia caused personal injury to Plaintiff.

131. Plaintiff has exhausted his administrative remedies.

132. Under the Federal Tort Claims Act, the United States is liable to Plaintiff for negligence.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a. Award compensatory damages in an amount to be determined at trial;

b. Award attorney's fees and costs; and

c. Grant such other and further relief as this Court deems just and proper.

Dated: August 18, 2021                     Respectfully submitted by:


                                           **/s/ *María Martínez Sánchez***
                                           María Martínez Sánchez
                                           Zoila Alvarez Hernández
                                           Rebecca Fae Sherman Sheff
                                           ACLU OF NEW MEXICO
                                           P.O. Box 566
                                           Albuquerque, NM 87103
                                           T: (505) 266-5915 Ext. 1004
                                           F: (505) 266-5916
                                           msanchez@aclu-nm.org
                                           zalvarez@aclu-nm.org
                                           rsheff@aclu-nm.org

14